# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. DEVRIE PEOPLES, as next friend of | ) | |
| 2. R.P., a minor, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-949-R |
| | ) | |
| 1. NORMAN PUBLIC SCHOOLS, | ) | |
| OKLAHOMA INDEPENDENT | ) | |
| SCHOOL DISTRICT NO. 29 | ) | |
| CLEVELAND COUNTY, OK | ) | |
| | ) | |
| DEFENDANT. | ) | |

## **ORDER**

Before the Court is Plaintiff's Motion for a Preliminary Injunction. Plaintiff asks this Court to issue an injunction that would require Defendant Norman Public Schools ("NPS") to permit Plaintiff's son, R.P., to play football for his current high school, Norman North High School ("NN" or "Norman North").

The undersigned has considered the arguments and evidence the parties presented in the briefing and an evidentiary hearing. Having so considered, the undersigned is deeply sympathetic to R.P.'s situation. It is evident that he has received very poor advice and has been left to suffer the consequences. Nevertheless, as explained in further detail below, the Court cannot grant Plaintiff's request for a preliminary injunction because she has not shown a likelihood of success on the merits.

## I. Background

R.P., a junior, lives in the Norman North school district, and attended a middle school that feeds into Norman North. Accordingly, Norman North is Plaintiff's "home school." However, before his freshman year was to begin, Plaintiff submitted a transfer request that would permit R.P. to attend Norman High School ("NHS" or "Norman High"), a school outside of his zone of residence. Because the request was approved, R.P. attended NHS his freshman and sophomore year. During that time, he was a quarterback for NHS's football team, receiving a varsity letter his freshman year and playing as starting quarterback his sophomore year. At the end of his sophomore year's football season, in December 2015, R.P.'s mother submitted a second request for R.P. to transfer to Norman North. This transfer request also was granted. As a part of this transfer request, Plaintiff filed out the "Intra-District Transfers (Athletic Eligibility)" form. This form set forth NPS's policy on the impact that a secondary transfer would have on a student's eligibility in competitive athletics. Relevant here, the policy stated:

> "no more than one transfer request will be approved for a student while in middle school or while in high school . . . If a student requests and is granted a second transfer, the student must attend the school to which transferred for a calendar year before gaining eligibility for participation in OSSAA[1] sanctioned events."

Doc. No. 9-3; *see also* Doc. No. 9-1 (excerpt of the NPS policy).

After this second transfer was approved, Plaintiff requested that R.P. be granted immediate athletic eligibility at Norman North. After receiving Plaintiff's request, the

---
[1] OSSAA refers to Oklahoma Secondary Schools Activities Association, which governs competitive extracurricular activities, including interscholastic athletic competitions.

School District convened a three-member *ad hoc* committee to determine whether R.P. would be immediately eligible to play football. The committee determined, pursuant to the NPS policy, R.P. was ineligible to play varsity football for one calendar year following his transfer. This determination has the practical effect of preventing R.P. from playing football his junior year. He can, however, practice with the football team and participate in junior varsity games. Plaintiff was informed of committee's decision no later than December 14, 2015. Plaintiff brought this lawsuit on August 19, 2016 alleging that NPS's decision violated the Equal Protection Clause of the Fourteenth Amendment. She now moves for a preliminary injunction.

## II. Preliminary Injunction Standard

A plaintiff seeking a preliminary injunction must show these four factors: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

The parties dispute what standard of proof is required to meet the first factor, the likelihood of success on the merits. The applicable standard depends on whether Plaintiff seeks a "disfavored" injunction.[2] If so, Plaintiff must satisfy a heightened standard of proof. *RoDa*, 552 F.3d at 1209; *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1259 (10th Cir.

---

[2] The Tenth Circuit has identified three categories of disfavored injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (quotations omitted).

2005). Otherwise, if the Plaintiff is not seeking a disfavored injunction and can satisfy the other three injunctive factors,[3] the Plaintiff may show a likelihood of success under the "modified" approach of the Tenth Circuit. *RoDa*, 552 F.3d at 1209 n. 3. This approach requires the movant to show "'questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'" *See Id.* (quoting *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995)). The Court need not resolve the dispute of which standard applies, however, because Plaintiff is unable to show a likelihood of success on the merits even under the lower, modified standard.

## III. Plaintiff Does Not Show a Likelihood of Success on the Merits

Plaintiff claims that NPS's decision violated the Equal Protection Clause of the Fourteenth Amendment. The Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To show a violation of the Equal Protection Clause, Plaintiff must prove that Defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272–74 (1979). Such purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group."

---

[3] Because likelihood of success is a dispositive factor, the Court assumes without deciding that Plaintiff satisfies the other three preliminary factors. However, the Court notes that the balance of harms would be a close question, given NPS's interest in uniform application of its policies.

*SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) (quoting *Feeney*, 442 U.S. at 279 (citations omitted)). Plaintiff advances three theories of discriminatory treatment.

    *1.    Discrimination against student athletes*

Plaintiff first argues that the policy is not applied equally to similarly-situated individuals. The NPS policy states that a student must wait for a calendar year before being eligible to participate in an "OSSAA" event. Doc. Nos. 9-3; 9-1. Plaintiffs explain that "OSSAA" events include band, debate, and athletics. However, the secondary transfer policy only applies to athletics. That is, even if a student transfers twice, they will not have to sit out of band or debate for one year; they are immediately eligible to play. In short, Plaintiff argues that NPS applies the policy in a way that is discriminatory towards athletes.

Because athletes are not a protected or suspect class, this argument will only be subject to rational basis review. *See In re U. S. ex rel. Missouri State High Sch. Activities Ass'n*, 682 F.2d 147, 152 (8th Cir. 1982) ("Since athletes are not a suspect class and no fundamental right is impinged by applying the rule to athletics and not to other school activities, the standard of judicial scrutiny which should be applied is the rational relationship test"). Decisions under rational basis review are accorded "a strong presumption of validity." *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010). Rational basis review does not give this Court license to judge the wisdom of the policy itself. *Id.* Rather, it is the job of the Court to determine whether the classification is based on grounds that are wholly irrelevant to achieving the stated objective. *Id.*

5

NPS explains that the policy furthers its goal of academic and educational continuity. Without this policy, there is a concern that student athletes and their parents will transfer students from school to school to further athletic goals at the cost of academic progress. Further, multiple transfers will disrupt the continuity of the teams as well. Because there are a finite number of positions on an athletic team, a transferring athlete will take a spot that would otherwise be occupied by other students. These students will also be disrupted by a student who transfers multiple times between schools throughout their high school tenure. These concerns, NPS explains, are not present in non-athletic groups such as band or debate.

Plaintiff rebukes this explanation. Plaintiff points to a separate policy that permits a principal to revoke an intra-district transfer "if the student's grades, attendance (absences and/or tardies), transportation arrangements, or behavior reach an unacceptable level." Doc. No. 9-3, at 7. However, as explained above, the stated purpose of NPS's policy was to ensure that athletics would not interrupt the continuity of a student's academic progress. The revocation policy does not demonstrate that applying a secondary transfer policy to athletes alone is not rationally related to NPS's purpose of ensuring that a student's academic progress was not undermined by athletics, or that NPS's explanation is a sham. Further, it is not the province of this Court to question the wisdom of a separate school policy.

Accordingly, Plaintiff has not shown a likelihood of success on the merits with respect to this theory of her equal protection claim.

## 2. Discrimination on the basis of race

Plaintiff also argues that NPS's decision was motivated by racial animus. Because R.P. is an African-American, Plaintiff argues, NPS applied the policy differently as to him than Caucasian students. A claim of disparate treatment on the basis of race is subject to strict scrutiny. *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011). However, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Id.* at 1172-73 (quotations omitted).

Plaintiff has not shown a likelihood of success on the merits of this theory. The only student she can identify as potentially similarly-situated is J.F., a Native American student who is not similarly-situated nor treated differently. Rather, J.F., as explained below, experienced a different outcome because he had different circumstances.

Like R.P., J.F. lives in the Norman North district but attended at NHS for his freshman through junior years, where his father was a coach. Like R.P., J.F. transferred to Norman North after spending the first part of his high school at NHS. That, however, is where the similarities end. Unlike R.P., J.F. never transferred to NHS. Rather, J.F. attended a middle school that fed directly into NHS. By contrast, R.P. attended a middle school that fed directly into Norman North. To attend NHS as a freshman, R.P. needed to submit a transfer, J.F. did not. Because J.F.'s transfer to Norman North was his first transfer, the secondary transfer policy did not apply to him, and he was able to immediately play football. In contrast, because R.P.'s transfer to Norman North was his second transfer, the secondary transfer policy did apply to him, and he was rendered

ineligible to play football for one year. Accordingly, J.F. is not similarly-situated to R.P. Moreover, because the policy did not apply to J.F., he did not receive differential or favorable treatment on the basis of his race, or any other reason.[4] The only other evidence that Plaintiff offers to support her charge that the decision was race-based was R.P.'s personal belief that he was targeted for race. However, such allegations are not sufficient to permit this Court to issue a preliminary injunction.[5] Accordingly, because Plaintiff has not identified any similarly-situated students who were treated differently, she has not shown a likelihood of success on the merits of this theory of her equal protection claim.

   *3. "Class-of-one" discrimination*

Finally, for the first time on reply, Plaintiff argues that R.P. was discriminated as a "class of one," that is, he was specifically targeted by a public official. The Supreme Court has recognized that an equal protection claim can proceed as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To prevail on this theory, Plaintiff must show that he was intentionally treated differently than a person who is

---

[4] Plaintiff herself contends that J.F. was able to play football immediately "because his father was a coach at [NHS] at the time of the transfer," further undermining suggestion that race of either student was a factor in the decision. Doc. No. 17, at 7.

[5] Plaintiff submits two arguments that this was in fact J.F.'s second transfer. First, Plaintiff argues because the policy provides "no more than one transfer request will be approved for a student while in middle school or while in high school," that J.F.'s transfer in middle school should count as his first transfer, making his subsequent transfer to Norman North his second transfer. As NPS explained, however, the language of the policy permits one transfer at the middle school level into NPS's interpretation of the policy, J.F.'s transfer to a middle school does not count against him at the high school level. This is not an unreasonable interpretation. Further, to the extent there was room for varying interpretations as to J.F., there was no question that under the policy, R.P.'s transfer to Norman North was his second. This difference also makes their situations dissimilar. Plaintiff alternatively argued that J.F.'s transfer back to his home school was automatically considered a second transfer under the policy, citing another provision of the policy. This provision, however, simply clarifies that a return to one's home school counts as a transfer.

similarly situated "in every material respect." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quotations omitted). Plaintiff must then show that the difference in this intentional treatment was not rational. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688-89 (10th Cir. 2012). If there is a reasonable explanation for the challenged action, the decision survives review. *Kansas Penn*, 656 F.3d at 1216 (10th Cir. 2011) ("This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations.") (citations omitted)

Plaintiff argues that R.P. was targeted by NPS because the NHS football coach had a personal vendetta against Plaintiff. To prove this theory, Plaintiff again offers the example of J.F. as proof that R.P. was treated differently. However, for the reasons explained above, J.F. was not similarly situated to Plaintiff, and any difference in result was a consequence of the fact that J.F. was on his first transfer and Plaintiff was on his second transfer.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion (Doc. No. 9) is DENIED.

IT IS SO ORDERED this 30th day of August, 2016.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE